U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

APR 0 4 2007

ROBERT H. SHEMWELL, CLERK
BY _____
           DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| RUSSELL W. SAVANT, ET AL | CIVIL ACTION NO. 05-1501 |
| versus | JUDGE TRIMBLE |
| BERETTA USA CORP., ET AL | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Before the court are three motions: "Defendants' Motion for Summary Judgment" [Doc. # 53], "Motion to Strike Defendants' Motion for Summary Judgment" [Doc. # 58] filed by plaintiffs, and "Defendants' Motion to Strike Evidence and Other Material in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment and Objections" [Doc. # 68]. Defendants move for summary judgment on the basis that there is no genuine issue of material fact as to whether or not plaintiff's damages arose out of a "reasonably anticipated use" of the shotgun at issue in this case. Plaintiffs seek to strike the motion for summary judgment because it is signed only by out-of-state counsel and not local counsel as required by Local Rule 83.2.3W. Defendants move to strike the summary judgment evidence submitted by plaintiffs because much of the evidence submitted is directed to whether or not the shotgun was "unreasonably dangerous," rather than the question of "reasonably anticipated use." Defendants also maintain that this evidence is hearsay and irrelevant. For the following reasons, the motion to strike the pleading under LR 83.2.3W will be DENIED as moot, the motion to strike plaintiffs'

1

proffered evidence will be DENIED and defendants' motion for summary judgment will be DENIED.

## I. Background

### A. Relevant Facts

On or about October 5, 2004, plaintiff, Russell W. Savant ("Savant") alleges that he was using a 12-gauge shotgun manufactured by Fabbrica d'Armi Pietro Beretta S.p.A.[1] ("Italian Beretta") when the shotgun fired without a trigger pull, discharging shot into Savant's lower abdomen and pelvic area resulting in severe, substantial and permanent injuries. Plaintiff filed suit against defendants under the Louisiana Products Liability Act ("LPLA") (LA. R.S. 9:2800.51, et seq.) alleging that the Beretta Model A390 shotgun he was using contained defects which made it "unreasonably dangerous" under R.S. 9:2800.56 of that Act. Defendants now seek summary judgment as outlined above.

### B. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving

---

[1] Plaintiff alleges that defendant, Italian Beretta, placed the shotgun into the stream of commerce in the United States through defendant Beretta U.S.A. Corp.

2

party. Anderson at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine factual issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(C). "Conclusory denials, improbable references, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323). If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response. Id.

The mere fact that both parties argue that there are no genuine issues of material fact does not automatically mean that a trial is unnecessary or that no factual issues exist. John v. Louisiana, 757 F.2d 698, 705 (5th Cir. 1985). Cross-motions must be considered separately because each movant bears the burden of establishing that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter of law. Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004). If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, this court may render summary judgment. Id.

**II.    Analysis of Law and Arguments**

Plaintiffs seek to strike the instant motion for summary judgment, filed by defendants, from the record on the basis that the pleading was not signed by local counsel. This court

3

granted defendants' motion to amend/correct pleading on February 21, 2007. The corrective documents filed by defendants were properly filed into the record in this case, curing any deficiency which may have existed. Accordingly, plaintiffs' motion to strike defendants' pleading will be DENIED as moot.

The LPLA was enacted in 1988 and "establishes the exclusive theories of liability for manufacturers for damage caused by their products." LA. R.S. 9:2800.52. As its content is substantive, rather than procedural, it only applies to causes of action accruing on or after September 1, 1998. Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, 527 (5th Cir. 1995).

Under the LPLA, a manufacturer will be held liable for damages proximately caused by "a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." LA. R.S. 9:2800.54(A); Kampen v. American Isuzu Motors, Inc., 157 F.3d 306, 309 (5th Cir. 1998). Thus, the threshold requirements are: (1) a reasonably anticipated use of the product, and (2) a causal connection between the unreasonably dangerous product and the damages alleged. Both of these elements must be proven and the absence of either one results in a failure of the claim under the LPLA. LA. R.S. 9:2800.54(D); Johnson v. Black & Decker, 701 So.2d 1360, 1362 (La. App. 2d Cir. 1997).

Plaintiffs' memorandum in opposition is devoted, in large part, to the question of whether or not the shotgun in question is "unreasonably dangerous." Reasonably anticipated use is a threshold element of a successful LPLA claim. If plaintiff cannot demonstrate that the injury claimed occurred during a reasonably anticipated use, the court will not reach the unreasonably dangerous element. Kampen v. American Isuzu Motors, Inc., 157 F.3d 306 at 309 (5th Cir.

1998) citing Johnson, supra, 701 So.2d at 1366 and Delphen v. Department of Transp. and Dev., State of Louisiana, 657 So.2d 328, 334 (La. App. 4th Cir. 1995).

"Reasonably anticipated use," for purposes of the LPLA, is defined as "use or handling of the product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." LA. R.S. 9:2800.53(7). "Reasonably anticipated use" is a more restrictive term of art than the pre-LPLA version, "normal use," and it does not suggest manufacturer liability for every conceivable or foreseeable use of its product, nor does it "encompass misuses in direct contravention of a warning where the danger should have been obvious to the experienced as well as the ordinary consumer." Delphen, supra, 657 So.2d at 333; London v. MAC Corp. of Amer., 44 F.3d 316, 318-319 (5th Cir. 1995); Kampen, supra, 157 F.3d at 309-312. Whether or not a use is classified as "reasonably anticipated" is an objective standard to be discerned from the viewpoint of the manufacturer at the time the product was produced. Lockhart v. Kobe Steel Ltd. Const. Machinery Div., 989 F.2d 864 (5th Cir. 1993).

Courts have employed many criteria in attempts to define the scope of "reasonably anticipated use," such as: "(1) whether the injured party used the product in a manner that was obviously dangerous; (2) what the user was instructed to do and warned not to do with respect to the use of the product; (3) whether the use of the product was expressly warned against in the product's labeling (or operations manual) and the language of the warning; and (4) the sophistication/experience of the user-purchaser." Broussard v. Proctor & Gamble Co., 463 F.Supp.2d 596, 607-608 (W.D. La. 2006), citing Hunter v. Knoll Rig & Equipment Manufacturing Co., Ltd., 70 F.3d 803, 806 (5th Cir. 1995); Lockhart, supra, 989 F.2d at 866; Laird v. Deep Marine Technology, Inc. 2005 WL 22949 at *2 (E.D. La. 2005); Frith v. John

Deere Co., 955 F.Supp. 663 (W.D.La. 1996).

When a consumer uses a product in contravention of an express warning or instruction, such use shall not be deemed "reasonably anticipated" when the manufacturer provides "clear direct, written warning," unless the plaintiff can show that the defendant manufacturer should have known that consumers were disregarding those express warnings or instructions while using its product. Broussard, supra, 463 F.Supp.2d at 608, citing Kampen, 157 F.3d at 317.

The referenced jurisprudence creates an elaborate framework against which we must interpret the facts of the case before us, weighing the summary judgment evidence presented.

### A.  Use or handling

Plaintiffs argue that Savant was not "using" the shotgun at the time he was shot. Instead, they contend that he merely placed himself in the "zone of danger" of a product which was unreasonably dangerous, drawing from the reasoning in Kampen. We must disagree.

Plaintiffs contend that Savant was not "using" the shotgun as contemplated in the LPLA, but, rather, merely positioned himself within the shotgun's "zone of danger." This term, borrowed from Kampen, is only significant with respect to an unreasonably dangerous product. As we have already stated, we will not reach a determination on the element of unreasonable dangerousness unless and until plaintiff demonstrates that his injuries occurred during a reasonably anticipated use of the product.

We must also reject plaintiffs' argument pertaining to "use" as he has already admitted that he was, in fact, "using" the shotgun during the accident in question. Plaintiffs' Amended Complaint [Doc. # 37] at ¶ V ("That on or about October 5, 2004, the plaintiff...was owner of and was using said shotgun in a reasonably anticipated use..."). We also note that plaintiff has

defended his practice of transporting the loaded shotgun in his truck on a regular basis, not just when hunting, by arguing that he used the shotgun in question constantly as a "farm tool." Given these prior characterizations of "use," we cannot now allow plaintiff to claim that he was not engaging in "use" of the shotgun. The evidence before us clearly establishes that plaintiff was engaged in "use" of the shotgun for the purposes of the LPLA.

We find support for our determination of "use" in the very case cited by plaintiffs as support for a finding of non-use. The Kampen court, interpreting LA. R.S. 9:2800.53(7), clearly states that "use" per the LPLA does not necessarily require physical contact with the product at issue. The parties to this suit disagree as to whether or not plaintiff actively pulled on the shotgun muzzle in an attempt to remove it from his truck or, in the alternative, whether he merely laid his hand against the muzzle in the moments before he was shot. The evidence demonstrates that plaintiff stood in front of the muzzle of the shotgun just before attempting to remove it from his truck. We find that Savant's use of the shotgun in question involved not only the shooting of ammunition, but, necessarily, the transportation of the shotgun from place to place as needed in order to keep the firearm on hand as he farmed and hunted. Consequently, we find that, at the time of the accident forming the basis of this suit, plaintiff Savant was engaged in a "use" of the shotgun within the meaning of the LPLA.

### B. Obvious Danger

Under the LPLA, a manufacturer will not be held liable for every conceivable, foreseeable use of a product. London v. MAC Corp. of America, 44 F.3d 316 (5th Cir. 1995). This is especially true when the danger presented by the consumer's misuse should have been obvious to the consumer, whether experienced or ordinary. Frith v. John Deere Co., 955 F.Supp.

663 (W.D. La. 1996).

In <u>Myers v. American Seating Co.</u>, 637 So.2d 771, 779 (La. App. 1st Cir. 1994), the Louisiana First Circuit Court of Appeal held that, while it was conceivable that a consumer might stand on the back portion of a folding chair, rather than on the front portion, the danger inherent in undertaking this behavior was so obvious that it could not properly be considered a reasonably anticipated use.

The Louisiana Fourth Circuit Court of Appeal reached a similar result in <u>Delphen v. Department of Transportation and Development, State of Louisiana</u>, 657 So.2d 328, 334 (La. App. 1st Cir. 1995), wherein the court held that plaintiff's use of a racing bicycle was not a reasonably anticipated use. Noting that plaintiff was aware of the presence of the front wheel quick release mechanism, the court held that an ordinary person would understand the obvious danger associated with such a sophisticated bicycle and would "inquire into the proper manner of fastening the quick release mechanism..." Citing <u>Hines v. Remington Arms Company, Inc.</u>, 648 So.2d 331 (La. 1994), the court held that the defendant manufacturer had no duty to warn consumers against dangers which are or should be obvious to an ordinary user. <u>Delphen</u>, <u>supra</u>.

In the case before us, plaintiff's own statements indicate that he was attempting to retrieve his Beretta shotgun from the back seat of his truck when he was shot. This testimony also reveals that he approached the gun (laid across the back seat of the truck) from the rear passenger side door, which positioned his body directly in front of the muzzle of the shotgun. Deposition of Russell Savant (9/14/2005) ("Savant Depo.") at p. 28, line 14 - p. 44, line 12.

Savant's testimony further indicates that, at the time he opened the rear passenger door and actually saw the shotgun, he was not actively thinking about whether or not the shotgun was

loaded. Savant Depo. at p. 102, line 25 - p. 103, line 4. Savant did affirm, however, that during hunting seasons the shotgun was generally kept loaded and stored in his truck. Savant Depo. at p. 97, lines 12 - 21. Taking this testimony together, we find that plaintiff, with knowledge that the shotgun lying in his backseat may have been loaded, willfully approached the gun from a direction which placed his body directly in front of the muzzle of that gun.

Savant's testimony also indicates that he approached the shotgun in this manner with the intent to transport the shotgun out of the truck by its muzzle. Savant Depo. at p. 63, lines 11-17. The parties dispute whether or not plaintiff actually took the shotgun muzzle into his hand and began to drag it from the truck, or simply placed his hand upon the muzzle immediately before the gun fired. Defendant's Motion for Summary Judgment [Doc. # 53] at p. 1; Plaintiffs' Response to Defendants' Statement of Undisputed Facts [Doc. # 63-4] at ¶ 17. We find that a determination of this issue is not relevant to the instant motion, as plaintiff's behavior before touching the shotgun dictates our result.

Plaintiff demonstrates, through his own testimony, that he was duly aware of the danger involved in handling firearms, specifically, the obvious danger of standing in front of the muzzle of a gun. Savant Depo. at p. 45, lines 20 - p. 46, line 4; p. 65, lines 11- 16; p. 67, line 14 - p. 68, line 1. The evidence conveys that there is an obvious danger associated with firearms and that plaintiff understood the risk and potential danger associated with his use of the gun. The court also finds that the obvious danger which attends standing in front of firearms is one which any ordinary user would recognize.

### C. Availability of Express Warnings/Instructions

We agree with plaintiffs' averment that we must consider the presence, nature and adequacy of the warnings provided as a part of our ultimate determination of whether or not plaintiff's use of the shotgun was reasonably anticipated under the LPLA. The existence of warnings and their adequacy is necessarily "intertwined" with the issue of reasonably anticipated use. Lockhart, supra, 989 F.2d at 867 - 868.

As previously stated, when a person misuses a product in contravention of direct warnings by the manufacturer, his misuse shall not be deemed reasonably anticipated unless he can present evidence demonstrating that the manufacturer knew that its product was being misused in this way, despite warnings to the contrary. Further, a manufacturer should not assume that consumers will misuse its product in a manner as to which it has provided specific warning against. It is assumed that an adequate warning will be read and heeded by an ordinary consumer. Kampen, supra, 157 F.3d at 317.

We must discern what warnings were available and how adequate such warnings were under the circumstances of this particular case.

Savant's testimony indicates that the Beretta shotgun at issue was given to him as a Christmas gift by his wife. Savant Depo. at p. 9, lines 3 - 14. Savant testified that the shotgun came with an owner's manual which he read once on Christmas day and perhaps "two or three more times in the next two or three days." Savant Depo. at p. 22, lines 3 - 25. The evidence also shows that the Beretta shotgun's manual included the following warnings:

> "Caution: read this manual carefully before handling and loading the gun.

THE COMMANDMENTS OF GUN SAFETY

(1) Treat every gun with respect and caution.
(2) Keep your eyes on the muzzle. Keep safety on until ready to shoot.
(3) Unload guns when not in use; keep the actions open.
(4) Be sure barrel is clear of obstructions.
(5) Be certain of the target at which you are going to fire. Know how to recognize the game you are hunting.
(6) Never shoot at a flat surface
(7) Never climb a tree or fence or jump a ditch with a loaded gun. Don't take a gun by the barrel.
(8) Never point a gun at anything you don't want to shoot. Avoid all horseplay while handling a gun.
(9) Store guns and ammunition separately, beyond the reach of children. Guns should always be unloaded.
(10) Avoid alcoholic beverages before or during shooting."

Savant admits that keeping the muzzle pointed in a safe direction is a common sense safety rule. Savant Depo. at p. 74, lines 14 - 17. Apart from the plaintiff's admitted knowledge of the obvious danger inherent in the use of firearms, plaintiff admits to reading these ten warnings concerning the use of firearms as part of the owner's manual included with his Beretta shotgun. As plaintiff began the process of removing the shotgun from the back seat of his truck he was unsure, at best, whether or not the gun was loaded, although he knew, generally, that the gun was loaded when it was in his truck.

We find that the summary judgment evidence before us demonstrates the availability of an adequate warning as to storing loaded firearms, positioning yourself in front of a firearm, and taking a firearm by the barrel. Plaintiff admits, numerous times, that he was aware of these warnings and that a portion of them are common sense safety rules. Under these circumstances, the warnings provided reiterate the obvious danger that is associated by the average user with the use or handling of firearms.

11

D. **Sophistication of the User**

We must now address the issue of the sophistication of the user as it relates to the adequacy of the warnings/instructions provided which, again, is a part of our ultimate determination as to whether or not the use undertaken was reasonably anticipated by the manufacturer. A manufacturer, as above, has a lessened duty to warn of danger when the danger is obvious. This duty is further lessened when the user is sophisticated. Johnston v. Hartford, 623 So.2d 35, 37 (La. App. 1st Cir. 1993); Ducote v. Liberty Mutual Ins. Co., 451 So.2d 1211, 1213 (La. App. 4th Cir. 1984); Duncan v. Louisiana Power & Light Co., 532 So.2d 968, 972 (La. App. 5th Cir. 1988).

Plaintiff's testimony reveals that he is an avid outdoorsman who began hunting at age five. Savant Depo. at p. 7, line 22 - p. 8, line 3. Savant testified that he owned a sizeable assortment of firearms and that he used the Beretta shotgun in question for nearly three years prior to the accident forming the basis of this suit. Savant Depo. at p. 10, line 10 - 14. When asked whether or not he had ever taken a gun safety course, he stated "just whatever they offered at school." Savant Depo. at p. 8, lines 11 - 13. He also affirmed that, because of his experience as a hunter, he was familiar with "how to handle guns." Savant Depo. at p. 8, lines 8 - 10.

Considering Savant's testimony in full, we find that the plaintiff is, indeed, a sophisticated firearms user with many years experience in the use and handling of guns. His deposition evidences an understanding of firearms and their various workings which an ordinary user may not possess.

We have, thus, conducted the first portion of the reasonably anticipated use analysis. To recount our determinations, we find that the plaintiff is a sophisticated firearms user who, having

12

read and understood the express warnings issued by Beretta, engaged in a "use" of the firearm by positioning his body in front of the shotgun muzzle while in the process of attempting to remove that shotgun from the back seat of his truck. Given our findings with respect to the plaintiff's sophistication, as well as his admitted knowledge of general gun safety rules, we find that the warnings issued were adequate to protect an ordinary user from the obvious danger of standing in front of a firearm under any circumstances.

Having determined that the plaintiff undertook an obviously dangerous use of the shotgun in contravention of Beretta's express warnings, we must now determine whether or not plaintiff has presented evidence sufficient to demonstrate that Beretta should have known that consumers were using its shotguns in contravention of those express warnings.

### E. Manufacturer Awareness of Use in Contravention of Warning

In order to classify Savant's use of the shotgun in question as a reasonably anticipated use under the LPLA, plaintiffs must have presented evidence that Beretta should have known that users were disregarding its warnings and using the product in direct contravention thereof. Lockhart, supra, 989 F.2d at 868; Kampen, supra, 157 F.3d at 314. There is a presumption that adequate warnings would be read and heeded by the user. Vickers v. Chiles Drilling Co., 882 F.2d 158 (5th Cir. 1989).

We will address, in this section of our reasonably anticipated use inquiry, defendants' motion to strike [Doc. # 68], as both determinations involve assessments of the same evidence.

Defendants attack three distinct types of evidence offered by plaintiffs in support of their contention that Savant was undertaking a reasonably anticipated use at the time of the shooting: testimony relating to the apparent misfire of the shotgun which occurred later in the afternoon

of the accident, documentary evidence of other misfiring events supplied by Beretta in response to a request for production, and, finally, two lay witness affidavits and two expert reports[2]. Motions to strike are generally disfavored. This court is vested with the duty to determine what evidence is relevant to the issue before us and will do so as explained below. As such, we find that the defendants' motion to strike should be DENIED.

We begin with the sworn statements of Christine Cooper, Peggy Kennedy, Bill Marcantel, Detective Greg Quirk, Wade Savant, and Paul Dwayne Spears (Exhibits A - F). These statements are all related, in that they all contain testimony verifying that the Beretta shotgun in question misfired while being handled by Detective Greg Quirk later in the afternoon on the day of the accident involving plaintiff Savant. As we have discussed at length, defendants' motion for summary judgment concerns the issue of reasonably anticipated use of the product under the LPLA, which is a threshold issue. These sworn statements offered by plaintiffs do not address the issue of reasonably anticipated use by plaintiff Savant and contain no information which would tend to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without such evidence. Rather, these statements concern an event wholly outside the scope of Savant's use of the firearm, as he was not even present for the misfiring which forms the basis for Exhibits A - F. Consequently, these sworn statements are irrelevant. Fed. R. Evid. 401.

We reach the same result with respect to the documentary evidence (Exhibits H - R) offered by plaintiffs as proof that Savant's Beretta shotgun was "unreasonably dangerous."

---

[2]All evidence attached as Exhibits A - R to Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment [Doc. # 63].

Documents supplied by Beretta which tend to demonstrate other misfiring incidents by Beretta gun owners are completely irrelevant to the issue of reasonably anticipated use. The documents pertaining to Mr. Augustin Testa do not provide any evidence of the "use" undertaken by Mr. Testa in conjunction with the reported misfiring. These documents are, therefore, wholly irrelevant to a determination of whether or not Beretta knew that people were routinely standing in front of gun muzzles and handling its products in contravention of express warnings. Fed. R. Evid. 401. Exhibit J contains documentary evidence of another reported misfiring and contains significantly more information as to the "use" element. In a letter written by his attorney, Mr. Ronnie Lack is said to have been target shooting when his gun unexpectedly fired in such a manner that the breach bolt recoil fractured his right thumb. It is apparent from this letter that this incident did not involve any of the elements of behavior before us in the instant case. Mr. Lack reportedly injured his thumb while holding the gun out in front of him. Again, this exhibit does not address whether or not Beretta should have known that people were undertaking the type of misuse forming the basis of this suit and is, therefore, irrelevant. Fed. R. Evid. 401. Exhibit K is a one-page document evidencing a third reported misfiring. It provides absolutely no information as to the "use" undertaken by the complainant, Mr. W.J. Schwalm, in conjunction with the misfiring. This evidence does not address the issue of whether or not Beretta should have known that people were disregarding its express warnings and using its products in the way that plaintiff Savant did. It is, accordingly, irrelevant to the issue at hand. Fed. R. Evid. 401.

We turn, lastly, to plaintiffs' two expert reports and lay witness affidavits. The admissibility of expert and lay witness testimony is provided for in Article VII of the Federal Rules of Evidence. At this point in our analysis, it is important to distinguish between the

admissibility of evidence and the weight such evidence may be given by the fact finder. While this court is vested with the duty to determine the admissibility of evidence at trial, it is not the fact-finder in this case, as a jury trial has been requested. As such, the jury will weigh the evidence admitted and determine issues of credibility at trial. With that being said, we now address whether or not plaintiffs' expert reports and lay witness affidavits are admissible, without weighing the quality or credibility of the same.

The first lay witness affidavit is that of Wade Wall (Exhibit L), a professional duck hunting guide. His affidavit states that he owns a Beretta Model A391 Urika shotgun and that he experienced a misfire. As we have indicated above, this testimony relates to a wholly separate incident and is not probative as to the issue of reasonably anticipated use. We therefore find that the portions of Mr. Wall's affidavit which relate to the reported misfiring of his own shotgun are irrelevant to the issue at hand. Fed. R. Evid. 401. The affidavit continues with his opinion that "there will obviously be one or more times when the muzzle of the shotgun...will be pointed at a human being." We find that this portion of the affidavit is relevant to the issue of whether or not Beretta should have known that people used its products in contravention of express warnings, as it references, albeit loosely and without much detail, an alleged standard practice among duck hunters. Such portions of the affidavit are relevant under the Federal Rules of Evidence and their weight is to be determined by the trier of fact.

The lay witness affidavit of Herbert Sills (Exhibit M), a professional quail hunting guide, is remarkably similar to that of Mr. Wall, although it does not discuss a purported misfiring. To the extent that Mr. Sills' affidavit states an opinion as to the regular habits of quail hunters, we find that the affidavit is relevant to the issue of reasonably anticipated use and, more specifically,

16

whether or not Beretta should have known that its shotguns were being used in contravention of express warnings. Such portions of the affidavit are relevant to the reasonably anticipated use question and their weight is to be determined by the trier of fact.

Plaintiffs also produced the expert report of Mr. John T. Butters, a registered professional engineer, which contains a plethora of technical information and opinions as to whether or not the Beretta shotgun is unreasonably dangerous as manufactured. As above, all portions of this affidavit which relate to the question of unreasonable dangerousness are irrelevant. Fed. R. Evid. 401. Insofar as other portions of the affidavit relate to the adequacy of the warnings provided, such portions are relevant to the question of reasonably anticipated use and their weight is to be determined by the trier of fact.

The second expert report submitted is that of Mr. Jack Belk, a past president of the American Custom Gunmaker's Guild, which plaintiffs have relied on for its assertion that Belk has "had many conversations, consultations and conferences with representatives of manufacturers of firearms and (is) knowledgeable as to what and how a firearm manufacturer would expect their firearms to be used and handled by those using and handling their firearms." Belk also opines that Savant's use of the shotgun is one that he has observed many times in the handling of firearms and that it is of the sort that manufacturers consider "reasonably anticipated use." We find that this affidavit is relevant and its weight should be determined by the trier of fact.

Defendants have also raised the motion to strike with respect to several arguments and responses to statements of uncontested fact submitted by plaintiffs. These items will not be stricken, but have been considered only insofar as they are relevant to the issue of reasonably

anticipated use.

## III. Conclusion

Pulling our lengthy analysis together, we find that plaintiff Savant was a sophisticated firearms user with many years experience shooting this particular gun, as well as others. We also find that he acted in contravention of Beretta's express warning and instruction when he positioned himself directly in front of the muzzle of a gun which he generally kept loaded. We find that the danger presented by Savant's behavior was obvious and should have been known to the ordinary, as well as the sophisticated user.

We find, however, that plaintiff has submitted summary judgment evidence sufficient to enable his claim under the LPLA to survive summary judgment. The anticipated expert and lay witness testimony to be submitted by the plaintiffs at must be weighed by the jury in order to determine their credibility as to the issue of whether or not Beretta should have known that people were using its shotguns in contravention of its express warnings.

Accordingly, defendants' motion for summary judgment will be DENIED. Defendants' motions to strike will also be DENIED.

Alexandria, Louisiana
April 4, 2007

JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE